## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### COURT FILE NO.: _____

| | |
|---|---|
| Carole Bonde,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Law Offices of Mitchell N. Kay, P.C.,<br>and Concetta Doe,<br><br>　　　　　Defendants. | **COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1.　　Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2.　　This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") by these Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiff.

3.　　Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.    Plaintiff Carole Bonde is a natural person who resides in the City of Eagan, County of Dakota, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.    Defendant Law Offices of Mitchell N. Kay, P.C. (hereinafter "MNK") is a collection agency and a law firm operating from an address of 7 Penn Plaza, P.O. Box 3163 New York, NY 10116-3163, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.    Defendant Concetta Doe (hereinafter "Doe") is a natural person who was employed at all times relevant herein by Defendant MNK as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

7.    On or before 2009, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card debt with American Express, in the approximate amount of $12,742.01.

8.    Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendants for collection from this Plaintiff.

### *May 12, 2009 Collection Call*

9.  On or about May 12, 2009, Plaintiff received her first call from Defendant Concetta Doe, which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

10. Defendant Doe demanded the balance in full on this debt.

11. Plaintiff explained that she did not have it and wanted to make payment arrangements if she could.

12. Plaintiff explained to Defendant Doe that she was at work on her cell phone and could not receive calls at work.

13. Defendant Doe contradicted Plaintiff and told her that obviously she could take calls because Plaintiff had answered her cell phone.

14. Defendant Doe was rude and argumentative with Plaintiff and kept her on the telephone for approximately 10 minutes.

15. Plaintiff and Defendant Doe agreed that Plaintiff would call her back on May 15, 2009 to discuss the account.

16. These communications from Defendants on this occasion were false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### *May 13, 2009 Collection Call*

17.    Despite their previous agreement to discuss this account only on May 15, 2010, Defendant Doe called Plaintiff again on or about May 13, 2009, which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

18.    Plaintiff reminded Defendant Doe of the agreement that they were not to speak again until two days later and that Plaintiff would initiate the call because she was at work.

19.    Defendant Doe acknowledged the agreement but instead started in on Plaintiff and demanded payment for this debt.

20.    Defendant Doe told Plaintiff that she was bending over backwards to work with Plaintiff and demanded that Plaintiff postdate a check.

21.    Defendant Doe was extremely rude and constantly interrupted Plaintiff when she spoke with her and repeatedly talked over Plaintiff.

22.    Plaintiff reminded her that she could not take calls while working.

23.    Thereafter, the collection call ended.

24.    These communications from Defendants on this occasion were false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(2),

1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### First May 15, 2009 Collection Call

25.    On or about May 15, 2009, Plaintiff received a call from Defendant Doe on her cell phone while at work.

26.    During the course of this call, Defendant Doe repeatedly demanded payment of this debt and therefore it was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

27.    Plaintiff again told Defendant Doe that she was at work and could not take calls.

28.    These communications from Defendants on this occasion were false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### Second May 15, 2009 Collection Call

29.    On or about May 15, 2009, Plaintiff received another call from Defendant Doe on her cell phone while at work.

30.   During the course of this call, Defendant Doe repeatedly demanded payment of this debt and therefore it was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

31.   Plaintiff again told Defendant Doe that she was at work and could not take calls.

32.   Defendant Doe then claimed that she was not feeling well and going home early.

33.   Defendant Doe then told Plaintiff that she wanted to get a payment arrangement from Plaintiff before she left for the day.

34.   Defendant Doe stated that she wanted a postdated check for $5,000, which would settle the account in full as a charge off.

35.   Plaintiff told Defendant Doe that she could not afford to make this payment as she had been out of work for eight months.

36.   Plaintiff also told Defendant Doe that she was not comfortable issuing postdated checks.

37.   Defendant Doe told her that she could make a down payment of $3,200 by the 29th of the month and then pay the balance by the 31st.

38.   Plaintiff again told Defendant Doe that she could not afford to make this payment and Defendant Doe responded by telling her to return the call the

following day, Saturday, and let her know what Plaintiff had come up with to fund this settlement.

39.     These communications from Defendants on this occasion were false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### *May 18, 2009 Collection Calls*

40.     On or about May 18, 2009, Plaintiff returned a call to Defendant Doe.

41.     Plaintiff told Defendant Doe that she would call her later in the day to discuss payment arrangements while she was on her lunch break.

42.     Later that morning, Plaintiff called Defendant Doe back as promised and left a message with another collector named Vince.

43.     Vince told Plaintiff that he would have Defendant Doe call Plaintiff back the following week.

44.     Plaintiff explained that she needed additional time to try to locate funds.

45.     Thereafter the call ended.

*Dozen Harassing Calls on May 18, 2009*

46.   Following that conversation, on May 18, 2009, Plaintiff then received a serious of at least (12) twelve repeated and harassing collection calls from Defendant Doe.

47.   These calls came in at 12:05, 12:27, 12:27, 12:34, 12:35, 12:36, 12:37, 12:45, 1:53, 3:40, and 5:24 PM all from Defendants' toll free number.

48.   Plaintiff then received a call from her husband who told her that Defendant Doe had called him and told him that she had been trying to work with Plaintiff, she was not returning her calls, and had not kept her agreement with Defendants.

49.   These were false statements made by Defendant Doe to Plaintiff's husband.

50.   Thereafter, Plaintiff called Defendant Doe and told her that these statements were untrue.

51.   Defendant Doe denied having made the statements to Plaintiff's husband.

52.   Defendant Doe claimed that she was trying to "help" Plaintiff.

53.   Plaintiff then said she was going to do something for her that will make Plaintiff "like" Defendant Doe again.

54.   Defendant Doe then said that she could do a hardship for Plaintiff and just had to have her boss sign off on it so that Plaintiff could pay $3,200 by the end of the month.

55.   Defendant Doe then that said she would send her a copy of the agreement and put Plaintiff on hold to get her boss to sign off.

56.   When Defendant Doe came back on the phone, she told Plaintiff that it was a done deal.

57.   When that agreement came later by fax it was not what Plaintiff had agreed to, but rather demanded $5,000 to settle this account.

58.   Providing Plaintiff with an agreement that was materially different than what had been agreed to be was a false and deceptive practice in an effort to collect a debt.

59.   These communications from Defendants on this occasion were false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### Second May 15, 2009 Collection Call

60.   On or about May 19, 2009, Plaintiff received another call from Defendant Doe on her cell phone while at work.

61.    During the course of this call, Defendant Doe repeatedly demanded payment of this debt and therefore it was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

62.    Plaintiff again told Defendant Doe that she was at work and could not take calls.

63.    Defendant Doe told Plaintiff that she needed a postdated check from her in the amount of $3,200.

64.    Plaintiff did not want to provide a postdated check because the offer was left open until May 29th by the Defendants and that they had earlier agreed that they would discus the matter on the following Friday.

65.    Defendant Doe continued to pressure Plaintiff and became rude.

66.    Defendant Doe told Plaintiff that she was doing everything for Plaintiff, but that Plaintiff kept changing her mind and refused to work with Defendants.

67.    Defendant Doe told Plaintiff that the purpose of the post-dated check was so that she could go back to the creditor and tell them that she had a good faith agreement and that therefore the case would not escalate.

68.    Plaintiff questioned why things would escalate if she had an agreement with Defendants.

69.    Defendant Doe continued to pressure Plaintiff and told her that she had to cooperate and post-date a check to Defendants.

70.   These communications from Defendants on this occasion were false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### *False and Illegal Threats of Suit*

71.   Throughout this series of collection calls by Defendant Doe to Plaintiff, Defendant Doe repeatedly threatened to bring suit against Plaintiff for this debt.

72.   Defendant Doe falsely claimed that she would sue Plaintiff and have her wages garnished.

73.   Despite these repeated threats of suit, Plaintiff has never been sued for this debt.

74.   Defendant Doe also told Plaintiff that she had the right to call her as many times as she wanted to collect this debt.

75.   These communications from Defendants on this occasion were false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(2),

1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

76. Defendants had neither the right nor the present ability to sue Plaintiff for this debt at the time they made these threats of litigation and suit.

77. Plaintiff genuinely believed that Defendants would sue her to collect this debt and feared being taken to court by the Defendants.

78. Defendants are not licensed as attorneys in the state of Minnesota and their false threats of lawsuit constituted the unauthorized practice of law within this state, which were also threats to take a legal action that they did not intend to take and were not authorized to take in violation of the FDCPA.

79. Defendants are collecting on the debts of another and are not exempt from licensure requirements under Minnesota collection law, and therefore their collection activity involving repeated threats to sue Plaintiff constituted false threats to take an action that Defendants were not legally entitled to take in violation of the FDCPA and Minnesota consumer protection laws.

80. Defendants' threats of litigation and suit were false, deceptive, and harassing and designed to scare Plaintiff into paying this debt.

81. These communications from Defendants on this occasion were also independently false, deceptive, harassing and illegal communications in an attempt to collect this debt all done in violation of numerous and multiple

violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### *Unauthorized Practice of Law*

82. Minn. Stat. § 481.02 states in pertinent part:

> **481.02 UNAUTHORIZED PRACTICE OF LAW.**
>
> Subdivision 1. Prohibitions. **It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law,** to appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except personally as a party thereto in other than a representative capacity, or, **by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel**, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor at law, or in furnishing to others the services of a lawyer or lawyers, or, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services, or, for or without a fee or any consideration, to prepare, directly or through another, for another person, firm, or corporation, any will or testamentary disposition or instrument of trust serving purposes similar to those of a will, or, for a fee or any consideration, to prepare for another person, firm, or corporation, any other legal document, except as provided in subdivision 3.

83. The original creditor of this debt, American Express, is a foreign corporation that must be represented in civil actions by a licensed Minnesota attorney.

84.  The threat to commence litigation against a Minnesota resident in Minnesota on behalf of a foreign corporation is the practice of law and can only be done by licensed Minnesota attorneys.

85.  None of the Defendants are attorneys licensed to practice law in Minnesota.

86.  By threatening to bring suit against Plaintiff on behalf of their corporate client, Defendants have therefore engaged in the unauthorized practice of law with respect to Plaintiff in violation of Minn. Stat. § 481.02, Subd. 1 and are therefore liable for Plaintiff's actual damages, attorney's fees, and costs.

87.  It was a false and deceptive practice by Defendants to state, suggest or imply that they were in fact authorized to practice law within this State when they were not.

88.  Defendants' unauthorized practice of law in Minnesota was also a false and deceptive practice in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692f and 1692f(1), amongst others.

### *Summary*

89.  All of the above-described collection communications made to Plaintiff by these individual Defendants and other collection employees employed by Defendant MNK, were made in violation of numerous and multiple provisions

of the FDCPA, including but not limited to all of the above cited provisions of the FDCPA, amongst others.

90.   The above-detailed conduct by these Defendants of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA, as well as an invasion of Plaintiff's privacy by an intrusion upon seclusion and by revelation of private financial facts and resulted in actual damages to this Plaintiff.

91.   This series of abusive collection calls by Defendant MNK and its employees pushed Plaintiff to consider bankruptcy as a way out of these invasive calls.

92.   Defendants repeated attempts to collect this debt from Plaintiff was an invasion of Plaintiff's privacy and her right to be left alone.

93.   Defendants' illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff and caused her unnecessary personal strain in her relationships with her family members.

94.   Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other

negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

### *Respondeat Superior Liability*

95.   The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant MNK who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant MNK.

96.   The acts and omissions by these individual Defendants and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant MNK in collecting consumer debts.

97.   By committing these acts and omissions against Plaintiff, these individual Defendants and these other debt collectors were motivated to benefit their principal, Defendant MNK.

98.   Defendant MNK is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this debt from Plaintiff.

## TRIAL BY JURY

99.   Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

100.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

101.   The foregoing acts and omissions of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

102.   As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant herein.

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

103. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

104. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

105. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

106.  Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of this Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

107.  Defendants also intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully disclosing information about this debt to third parties, and thereby invaded Plaintiff's right to financial privacy.

108.  Defendants and their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

109.  Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

110.  The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

111.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## COUNT III.

## UNAUTHORIZED PRACTICE OF LAW

## MINN. STAT. § 481.02

112.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

113.   Defendants' foregoing acts as described herein in attempting to collect these alleged debts by threatening to commence suit against her on behalf of its corporate client was the unauthorized practice of law in Minnesota.

114.   Plaintiff is therefore entitled to declaratory relief pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, declaring Defendants' actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02.

115.   Plaintiff is entitled to injunctive relief pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, enjoining Defendants from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02.

116.  Plaintiff is entitled to Plaintiff's attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

### COUNT II.

### INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

- for an award of actual damages from each and every Defendant for the emotional distress suffered as a result of the intentional and/or negligent

FDCPA violations and intentional and/or negligent invasions of privacy in an amount to be determined at trial and for Plaintiff;

## COUNT III.

## UNAUTHORIZED PRACTICE OF LAW

## MINN. STAT. § 481.02

- Declaring Defendants' actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- Enjoining Defendants from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- Awarding Plaintiff attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a;

- and, for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 14, 2010

**BARRY & SLADE, LLC**

By:  **s/Peter F. Barry**
Peter F. Barry, Esq.
Attorney I.D.#0266577
2021 East Hennepin Avenue, Suite 195
Minneapolis, Minnesota 55413-1773
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810
pbarry@lawpoint.com

pfb/ra

**Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA          )
                                        ) ss

COUNTY OF HENNEPIN         )

Plaintiff Carole Bonde, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Carole Bonde

Subscribed and sworn to before me
this 14th day of April, 2010.

Notary Public

PETER FRANCIS BARRY
Notary Public-Minnesota
My Commission Expires Jan 31, 2015